UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRED MCCLURE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| v. ) | |
| ) | |
| RUSSELL INVESTMENT MANAGEMENT ) | |
| COMPANY and RUSSELL FUND ) | |
| SERVICES COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT**

# TABLE OF CONTENTS

Page(s)

I.      NATURE OF THE ACTION ................................................................................1

II.     JURISDICTION AND VENUE ...........................................................................4

III.    PARTIES ..............................................................................................................4

        A.      Plaintiff and the Named Funds ...............................................................4

        B.      Defendants ..............................................................................................7

IV.     BACKGROUND INFORMATION ABOUT THE INVESTMENT
        MANAGEMENT INDUSTRY AND THE PURPOSE OF SECTION 36(b)....................8

V.      DEFENDANT RIMCO CHARGED The Named FundS EXCESSIVE
        INVESTMENT MANAGEMENT FEES................................................................9

        A.      The Nature and Quality of the Investment Management Services
                Performed by Defendant RIMCo Do Not Justify Defendant RIMCo's Fee ..........10

        B.      Defendant RIMCo Charged Excessive Fees Based on the Costs and
                Profitability of Providing Its Advisory Services....................................18

        C.      Economies of Scale Enjoyed in Connection with the Investment
                Management Services Were Not Passed on to the Named Funds as
                Required by Section 36(b) ......................................................................20

VI.     DEFENDANT RFSC CHARGED THe Named FundS EXCESSIVE
        ADMINISTRATIVE FEEs..................................................................................23

        A.      The Nature and Quality of the Administrative Services Performed by
                Defendant RFSC Do Not Justify Its Fees ..............................................24

        B.      The Costs and Profitability of Providing Administrative Services Do Not
                Justify Defendant RFSC's Fees..............................................................26

        C.      Economies of Scale Were Not Passed on to the Named Funds............................28

        D.      ███████████████████████████████████████████
                █████████████████████████████████████████████
                █████████████████████████████████████████████
                █████████████████████████████████████ ......................................31

VII.    DEFENDANTs CHARGED DUPLICATIVE FEES TO the NAMED FUNDs
        FOR INVESTMENT MANAGEMENT AND ADMINISTRATIVE SERVICES ..........31

VIII.   THE BOARD DID NOT ACT CONSCIENTIOUSLY IN APPROVING THE
        INVESTMENT MANAGEMENT AND ADMINISTRATIVE FEEs CHARGED
        TO THE NAMED FUNDS......................................................................................35

IX.     COUNT I - Against Defendant RIMCo Pursuant to Section 36(b)  on Behalf of
        the Named Funds (Investment Management Fees)............................................................39

X.      COUNT II - Against Defendant RFSC Pursuant to Section 36(b)  on Behalf of the
        Named Funds (Administrative Fees) ................................................................................40

XI.     PRAYER FOR RELIEF .................................................................................................42

Plaintiff Fred McClure, by his undersigned attorneys, brings this complaint against defendants Russell Investment Management Company ("RIMCo") and Russell Funds Services Company ("RFSC") (together, "Defendants") and pleads as follows:

## I.   NATURE OF THE ACTION

1.     This action is brought by plaintiff on behalf of Russell Commodity Strategies Fund ("Commodity Strategies"), Russell Emerging Markets Fund ("Emerging Markets"), Russell Global Equity Fund ("Global Equity"), Russell Global Infrastructure Fund ("Global Infrastructure"), Russell Global Opportunistic Credit Fund ("Global Opportunistic Credit"), Russell International Developed Markets Fund ("International Developed Markets"), Russell Multi-Strategy Alternative Fund ("Multi-Strategy Alternative"), Russell Strategic Bond Fund ("Strategic Bond"), Russell U.S. Small Cap Equity Fund ("U.S. Small Cap Equity"), and Russell Global Real Estate Securities Fund ("Global Real Estate") (collectively, the "Named Funds") against Defendants, pursuant to section 36(b) of the ICA, as amended 15 U.S.C. §80a-35(b) ("Section 36(b)").[1]

2.     Defendant RIMCo serves as the investment manager/adviser to the Russell Family of Funds for which defendant RIMCo charges the Named Funds fees.  In calendar year 2013 defendant RIMCo charged the Named Funds fees of ████████, and after paying other investment advisers (the "Money Managers"), incurred costs of only ████████ thus receiving a profit of ████████ a margin of ████ In the 2014 fiscal year the Named Funds paid

---

[1] Russell Investments offers forty-seven mutual funds in total, which are collectively referred to herein as the "Russell Family of Funds."  Defendants serve as the investment manager/adviser and administrative agent, respectively, for each of the mutual funds in the Russell Family of Funds.  The Russell Family of Funds is subdivided into four "fund complexes": Russell Investment Company ("RIC"), Russell Investment Funds ("RIF"), Russell Exchange Traded Funds ("RET"), and Russell Institutional Funds LLC ("RIFL").  Plaintiff has filed this action on behalf of the ten Named Funds, each of which is part of RIC, an open-end management company under the Investment Company Act of 1940 ("ICA").

defendant RIMCo a total of over *$209 million* in investment management fees.  Of that sum, defendant RIMCo paid *$72 million* to Money Managers for providing sub-advisory services to the Named Funds, retaining *$134 million* for itself.  For fiscal year 2015,[2] defendant RIMCo is projected to receive $220 million in investment management fees, and after paying sub-advisory fees to the Money Managers, will retain a comparable percentage for itself.  Thus, despite delegating a substantial portion of its investment management duties to the Money Managers and performing minimal additional work that was predominately supervisory in nature, defendant RIMCo charged fees that were more than *184%* greater than the fees paid to the Money Managers for these years.  In other words, ███████████████████████████████

████████████████████████

3.      Defendant RIMCo breached its fiduciary duty under Section 36(b) by charging the Named Funds excessive investment management fees.  Defendant RIMCo's fees are illegal and improper as shown by: (i) the nature and quality of services provided to the Named Funds and their security holders in exchange for the investment management fees; (ii) the costs and profitability of defendant RIMCo's investment management services; and (iii) the failure of defendant RIMCo to adequately share economies-of-scale savings with the Named Funds and their security holders, and the retention of those economies-of-scale savings by defendant RIMCo.

4.      Defendant RFSC, a wholly-owned subsidiary of RIMCo, serves as the Administrator for the Named Funds.  For 2013 alone, RFSC charged the Named Funds ███

---

[2] Plaintiff pleads facts gleaned from both public information and documents produced by Defendants in discovery.  Documents produced in discovery disclose non-public financial data, based on the calendar year for 2013.  As of this filing, calendar year 2014 financial data is not yet available. Public documents disclose limited financial data based on the Named Funds' fiscal year, which ends September 30.  Thus, plaintiff pleads calendar year financial data for 2013 and fiscal year data, where available, for 2014.

████ in administrative fees while incurring operating expenses of less than ████. ***Thus, in 2013, defendant RFSC received more than*** ████ ***in operating profit, a profit margin of*** ████, ***for administrative services provided to only the Named Funds***.  For fiscal year 2014, defendant RFSC collected administrative fees of approximately $12.9 million, and in fiscal year 2015 defendant RFSC is projected to collect $12.6 million for administrative services provided to the Named Funds, thereby generating revenues greater than those achieved in 2013.

5.     Defendant RFSC breached its fiduciary duty under Section 36(b) by charging the Named Funds excessive administrative fees.  Defendant RFSC's fees are illegal and improper as shown by: (i) the nature and quality of services provided to the Named Funds and their security holders in exchange for the administrative fees; (ii) the costs and profitability of providing defendant RFSC's administrative services; (iii) the failure of defendant RFSC to adequately pass economies-of-scale savings on to the Named Funds and their security holders, and the retention of those economies-of-scale savings by defendant RFSC; and (iv) ████████

████████████████████

████████████

6.     Defendants also breached their fiduciary duties by charging the Named Funds duplicative fees in average annual amounts of $7 million and $1.9 million, for advisory and administrative services, respectively.  In its discretion, defendant RIMCo allocates portions of the Named Funds' assets (primarily cash reserves) into certain affiliated mutual funds, which are also managed by defendant RIMCo (the "Affiliate-Managed Funds").  Because their fees are calculated based on the assets under management ("AUM") in the funds, Defendants charged two layers of advisory and administrative fees—one for assets invested in the Named Funds and

one for assets invested in the Affiliated-Managed Funds—despite providing only one layer of advisory and administrative services.

7.    In addition, the failure of the Russell Family of Funds' Board of Trustees (the "Board") to conscientiously negotiate the Named Funds' advisory and administrative fees further demonstrates Defendants' breaches of their fiduciary duties.   The Board failed to effectively bargain for reasonable fees with Defendants, and improperly approved fees that were duplicative and excessive given the poor performance of the funds and in comparison to fees charged to comparable funds.

8.    Pursuant to Section 36(b)(3), plaintiff seeks on behalf of the Named Funds, the damages resulting from the breaches of fiduciary duties by Defendants, including the amount of excessive compensation and payments received by Defendants and the rescission of the contracts that form the basis for the excessive and illegal fees.

## II.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §80a-43, 15 U.S.C. §80a-35(b)(5), and 28 U.S.C. §1331.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 and 15 U.S.C. §80a-43 as RIC is a Massachusetts business trust and a substantial part of the events or omissions that give rise to plaintiff's claims occurred in this district.

## III.    PARTIES

### A.    Plaintiff and the Named Funds

11.    Plaintiff Fred McClure is a security holder of the Named Funds.

12.    Commodity Strategies is a RIC fund with net assets of $1.04 billion as of April 30, 2015.   Commodity Strategies invests in commodity index-linked securities, other commodity-linked securities, derivative instruments, cash, and fixed income securities that

together are intended to provide exposure to the performance of the collateralized commodity futures market.  Commodity Strategies has five different share classes for investment: A, C, E, S, and Y.  Commodity Strategies' principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

13.     Emerging Markets is a RIC fund with net assets of $3 billion as of April 30, 2015. Emerging Markets invests in emerging market companies.  Emerging Markets has five different share classes for investment: A, C, E, S, and Y.  Emerging Markets' principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

14.     Global Equity is a RIC fund with net assets of $3.2 billion as of April 30, 2015. Global Equity invests in equity securities of companies economically tied to a number of countries around the world.  Global Equity has five different share classes for investment: A, C, E, S, and Y.  Global Equity's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

15.     Global Infrastructure is a RIC fund with net assets of $1.5 billion as of April 30, 2015.  Global Infrastructure invests in securities issued by companies that are engaged in the infrastructure business, including, but not limited to, systems and networks of energy, transportation, communication, and other services required for the normal function of society. Global Infrastructure has five different share classes for investment: A, C, E, S, and Y.  Global Infrastructure's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

16.     Global Opportunistic Credit is a RIC fund with net assets of $1.9 billion as of as of April 30, 2015.  Global Opportunistic Credit invests in bonds, including high yield debt securities, emerging markets debt securities, U.S. and non-U.S. corporate debt securities, fixed

income securities issued or guaranteed by the U.S. government or by non-U.S. governments, and other investment grade securities. Global Opportunistic Credit has five different share classes for investment: A, C, E, S, and Y. Global Opportunistic Credit's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

17.    International Developed Markets is a RIC fund with net assets of $3.4 billion as of April 30, 2015. International Developed Markets invests in developed markets that are located in countries other than the United States. International Developed Markets invests principally in equity securities, including common stocks and preferred stocks. International Developed Markets has six different share classes for investment: A, C, E, I, S, and Y. International Developed Markets' principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

18.    Multi-Strategy Alternative is a RIC fund with net assets of $609 million as of April 30, 2015. Multi-Strategy Alternative invests in a broad range of instruments, markets, and asset classes economically tied to U.S., foreign, and emerging markets, and employs a diverse range of alternative investment strategies, including relative value, event driven, equity hedge, and tactical trading strategies. Multi-Strategy Alternative has five different share classes for investment: A, C, E, S, and Y. Multi-Strategy Alternative's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

19.    Strategic Bond is a RIC fund with net assets of $6.8 billion as of April 30, 2015. Strategic Bond invests in bonds, including mortgage related securities, U.S. and non-U.S. corporate debt securities, fixed income securities, and other asset-backed securities. Strategic Bond has six different share classes for investment: A, C, E, I, S, and Y. Strategic Bond's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

20.     U.S. Small Cap Equity is a RIC fund with net assets of $2.3 billion as of April 30, 2015.  U.S. Small Cap Equity invests in small capitalization equity securities economically tied to the United States.  U.S. Small Cap Equity has six different share classes for investment: A, C, E, I, S, and Y.  U.S. Small Cap Equity's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

21.     Global Real Estate is a RIC fund with net assets of $1.67 billion as of as of April 30, 2015.  Global Real Estate invests in real estate securities. Global Real Estate has five different share classes for investment: A, C, E, S, and Y.  Global Real Estate's principal executive offices are located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

### B.     Defendants

22.     Defendant RIMCo is an investment adviser that serves registered investment companies under the ICA.  Pursuant to the Advisory Agreement entered into by defendant RIMCo and the Named Funds on January 1, 1999 (the "Advisory Agreement"), defendant RIMCo provides or oversees the provision of all investment advisory and portfolio management services for the Named Funds.  RIMCo is a Washington corporation with principal executive offices located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

23.     Defendant RFSC is an administrator and transfer agent that serves registered investment companies under the ICA.  Pursuant to the Amended and Restated Administrative Agreement dated January 1, 2008, and the Letter Agreement amendment dated August 27, 2013, (the "Administrative Agreement"), defendant RFSC provides or oversees the provision of all administrative services for the Named Funds.  Defendant RFSC, a wholly-owned subsidiary of defendant RIMCo, is a Washington corporation with principal executive offices located at 1301 Second Avenue, 18th Floor, Seattle, Washington.

## IV.  BACKGROUND INFORMATION ABOUT THE INVESTMENT MANAGEMENT INDUSTRY AND THE PURPOSE OF SECTION 36(b)

24.     A mutual fund is typically created and managed by a pre-existing entity known as an investment adviser that generally supervises the daily operation of the fund and often selects affiliated persons to serve on the fund's board of trustees.  Congress recognized as early as 1935 that because a typical mutual fund is organized by its investment adviser, which provides it with almost all of its management services, and because its shares are bought by investors who rely on those services, a mutual fund cannot, as a practical matter, sever its relationship with the adviser.

25.     Because of this relationship in the mutual fund industry, there is a lack of arm's-length bargaining between an adviser and its affiliated mutual funds.  As a result, Congress enacted the ICA.  The conflicts inherent in the structure of mutual funds, including those at issue here, exemplify the concern raised in the preamble to the ICA that "investment companies are organized, operated, [and] managed, ... in the interest of ... investment advisers, ... rather than in the interest of [shareholders]."  As stated in the ICA:

> [T]he *national public interest and the interest of investors are adversely affected ... when investment companies are organized, operated, [and] managed ... in the interest of ... investment advisers, ... rather than in the interest of [shareholders]* ... [or] when investment companies ... are not subjected to adequate independent scrutiny.

ICA section 1(b)(2), (5); 15 U.S.C. §80a-1(b).

26.     During the 1960s, Congress realized that investment advisers to mutual funds were charging those funds excessive fees.  Thus, Congress added Section 36(b) to the ICA in 1970.  This provision created a federal cause of action for breach of fiduciary duty by investment advisers.  Section 36(b) states in pertinent part:

> [T]he investment adviser of a registered investment company shall be deemed to have a *fiduciary duty with respect to the receipt of compensation for services,* or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person

of such investment adviser. ***An action may be brought under this subsection ... by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser ... for breach of fiduciary duty in respect of such compensation or payments*** paid by such registered investment company or by the security holders thereof to such investment adviser or person.

## V.  DEFENDANT RIMCO CHARGED THE NAMED FUNDS EXCESSIVE INVESTMENT MANAGEMENT FEES

27.    While Section 36(b) does not set forth a list of factors to be considered in determining whether an investment adviser has breached its fiduciary duty with respect to its receipt of compensation, the test for determining whether fee compensation paid to defendant RIMCo violates Section 36(b) is essentially whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in light of all the surrounding circumstances.   Thus, an adviser violates Section 36(b) if it charges a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.

28.    The investment management fees defendant RIMCo charged to the Named Funds are so excessive that they are in breach of defendant RIMCo's Section 36(b) fiduciary duty to the Named Funds with respect to such compensation.   The excessiveness of the fees is demonstrated by, inter alia: (i) the nature and quality of services provided to the Named Funds and its security holders in exchange for the investment management fees; (ii) the costs and profitability of defendant RIMCo's investment management services; and (iii) the failure of defendant RIMCo to adequately pass economies-of-scale savings on to the Named Funds and their security holders, and the retention of those economies-of-scale savings by defendant RIMCo.

**A.      The Nature and Quality of the Investment Management Services Performed by Defendant RIMCo Do Not Justify Defendant RIMCo's Fee**

29.      On January 1, 1999, defendant RIMCo entered into the Advisory Agreement with the Named Funds.   The Advisory Agreement tasks defendant RIMCo with "supervisory responsibility for the general management and investment of the Trust's assets and securities portfolios" and "investment discretion to make all determinations with respect to the investment of Sub-Trust assets not assigned to a Money Manager."   As stated in the Advisory Agreement, defendant RIMCo must fulfill the following general responsibilities for the Named Funds:

> The Manager [RIMCo] shall, subject to and in accordance with the investment objectives and policies of the Trust and each Sub-Trust and any directions which the Trust's Board of Trustees may issue to the Manager, have: *(i) overall supervisory responsibility for the general management and investment of the Trust's assets and securities portfolios; and (ii) full investment discretion to make all determinations with respect to the investment of Sub-Trust assets not assigned to a Money Manager.*

> The Manager shall develop overall investment programs and strategies for each Sub-Trust, or segments thereof, shall revise such programs as necessary, and shall monitor and report periodically to the Board of Trustees concerning the implementation of the programs.

> The Manager shall research and evaluate Money Managers and shall advise the Board of Trustees of the Trust of the Money Managers which the Manager believes are best suited to invest the assets of each Sub-Trust; shall monitor and evaluate the investment performance of each Money Manager employed by the Trust; shall determine the portion of each Sub-Trust's assets to be managed by each Money Manager; shall recommend changes or additions of Money Managers when appropriate; shall coordinate the investment activities of the Money Managers; and acting as a fiduciary for the Trust shall compensate the Money Managers.

> The Manager shall render to the Trust's Board of Trustees such periodic reports concerning the Trust's and Sub-Trust's business and investments as the Board of Trustees shall reasonably request.

30.      Rather than providing the majority of the investment management services directly to the Named Funds, defendant RIMCo subcontracts with other advisers to provide the services at a fraction of the fee charged to the Named Funds.   Nearly all of the Named Funds'

assets are managed by parties other than defendant RIMCo, leaving defendant RIMCo with relatively minimal asset management responsibilities.  According to the Advisory Agreement, the Money Managers "shall have full investment discretion and shall make all determinations with respect to the investment of a Sub-Trust's assets assigned to the Money Manager and the purchase and sale of portfolio securities with those assets, and such steps as may be necessary to implement its decision."  The following table shows the various Money Managers defendant RIMCo subcontracts with in support of managing the Named Funds' assets and demonstrates the percentage of each of the Named Funds' assets that are managed by these Money Managers:

| Fund | Money Managers (as of September 2013) | Percent of Assets Managed | Money Managers (as of October 2014) | Percent of Assets Managed | Money Managers (as of September 2015) | Percent of Assets Managed |
|---|---|---|---|---|---|---|
| Russell Commodity Strategies | Goldman Sachs Asset Management, L.P. | 40% | Goldman Sachs Asset Management, L.P. | 40% | Goldman Sachs Asset Management, L.P. | 40% |
| | Credit Suisse Asset Management, LLC | 40% | Credit Suisse Asset Management, LLC | 25% | Credit Suisse Asset Management, LLC | 25% |
| | CoreCommodity Management, LLC (formerly Jefferies Asset Management, LLC) | 20% | CoreCommodity Management, LLC (formerly Jefferies Asset Management, LLC) | 15% | CoreCommodity Management, LLC (formerly Jefferies Asset Management, LLC) | 15% |
| | - | - | Russell Investment Management Co. | 20% | Russell Investment Management Co. | 20% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Emerging Markets | Harding Loevner LP | 15% | Harding Loevner LP | 15% | Harding Loevner LP | 14% |
| | UBS Global Asset Management (Americas), Inc. | 10% | UBS Global Asset Management (Americas), Inc. | 10% | Westwood Management Corporation | 7% |
| | Genesis Asset Managers, LLP | 15% | Genesis Asset Managers, LLP | 12% | Consilium Investment Management | 5% |
| | Numeric Investors, LLC | 15% | Numeric Investors, LLC | 14% | Genesis Asset Managers, LLP | 12% |
| | Victoria 1522 Investments, LP | 7% | Oaktree Capital Management, L.P. | 13% | Numeric Investors LLC | 15% |
| | Westwood Management Corporation | 7% | Westwood Management Corporation | 7% | Oaktree Capital Management, L.P. | 16% |
| | Alliance Bernstein, L.P. | 16% | Alliance Bernstein, L.P. | 15% | AllianceBernstein, L.P. | 16% |

| Fund | Money Managers (as of September 2013) | Percent of Assets Managed | Money Managers (as of October 2014) | Percent of Assets Managed | Money Managers (as of September 2015) | Percent of Assets Managed |
|---|---|---|---|---|---|---|
| | Delaware Management Company | 15% | Delaware Management Company | 14% | Delaware Investments Fund Advisers | 15% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Global Equity | T. Rowe Price Associates, Inc. | 21% | Wellington Management Company, LLP | 18.5% | Wellington Management Company LLP | 15% |
| | MFS Institutional Advisors, Inc. | 26% | MFS Institutional Advisors, Inc. | 26% | MFS Institutional Advisors, Inc. | 22% |
| | Harris Associates, L.P. | 21% | Harris Associates, L.P. | 21% | Harris Associates L.P. | 18% |
| | Sanders Capital, LLC | 19% | Sanders Capital, LLC | 18.5% | Polaris Capital Management, LLC | 14% |
| | Polaris Capital Management, LLC | 13% | Polaris Capital Management, LLC | 16% | Sanders Capital, LLC | 16% |
| | - | - | - | - | Russell Investment Management Co. | 15% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Global Infrastructure | Cohen & Steers Capital Management, Inc. | 20% | Cohen & Steers Capital Management, Inc. | 16% | Cohen & Steers Capital Management, Inc. | 16% |
| | Nuveen Asset Management, LLC | 40% | Nuveen Asset Management, LLC | 32% | Nuveen Asset Management, LLC | 32% |
| | Colonial First State Asset Management (Australia) Limited | 40% | Colonial First State Asset Management (Australia) Limited | 36% | Colonial First State Asset Management (Australia) Limited | 36% |
| | - | - | Lazard Asset Management LLC | 16% | Lazard Asset Management LLC | 16% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Global Opportunistic Credit | DDJ Capital Management, LLC | 20% | DDJ Capital Management, LLC | 15% | DDJ Capital Management, LLC | 15% |
| | Lazard Asset Management, LLC | 20% | Lazard Asset Management, LLC | 18% | DuPont Capital Management Corporation | 30% |
| | Oaktree Capital Management, L.P. | 30% | Oaktree Capital Management, L.P. | 27% | Lazard Asset Management, LLC | 18% |
| | Stone Harbor Investment Partners, L.P. | 30% | Stone Harbor Investment Partners, L.P. | 30% | Oaktree Capital Management, L.P. | 27% |
| | - | - | THL Credit Advisors LLC | 10% | THL Credit Advisors LLC | 10% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Global Real Estate | AEW Capital Management, L.P. | 35% | Morgan Stanley Investment Management | 34% | Morgan Stanley Investment Management | 34% |

| Fund | Money Managers (as of September 2013) | Percent of Assets Managed | Money Managers (as of October 2014) | Percent of Assets Managed | Money Managers (as of September 2015) | Percent of Assets Managed |
|---|---|---|---|---|---|---|
| | Cohen & Steers Capital Management, Inc. | 30% | Cohen & Steers Capital Management, Inc. | 33% | Cohen & Steers Capital Management, Inc. | 33% |
| | INVESCO Advisers, Inc. | 35% | INVESCO Advisers, Inc. | 33% | INVESCO Advisers, Inc. | 33% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell International Developed Markets | Driehaus Capital Management LLC | 10% | Wellington Management Company, LLP | 9% | MFS Institutional Advisors, Inc. | 15% |
| | William Blair & Company, LLC | 12% | William Blair & Company, LLC | 13% | Wellington Management Company LLP | 10% |
| | MFS Institutional Advisors, Inc. | 20% | MFS Institutional Advisors, Inc. | 16% | Numeric Investors LLC | 22% |
| | AQR Capital Management, LLC | 17% | AQR Capital Management, LLC | 21% | Barrow, Hanley, Mewhinney & Strauss LLC | 18% |
| | del Rey Global Investors, LLC | 10% | Numeric Investors, LLC | 5% | Pzena Investment Management LLC | 20% |
| | Barrow, Hanley, Mewhinney & Strauss, LLC | 15% | Barrow, Hanley, Mewhinney & Strauss, LLC | 19% | Russell Investment Management Co. | 15% |
| | Pzena Investment Management, LLC | 16% | Pzena Investment Management, LLC | 17% | - | - |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Multi-Strategy Alternative | Amundi Investments US, LLC | 8% | Passport Capital, LLC | 13% | DCI, LLC | 8% |
| | DCI, LLC | 5% | DCI, LLC | 14% | Pacific Investment Management Company LLC | 11% |
| | Pacific Investment Management Company, LLC | 9% | Pacific Investment Management Company, LLC | 7% | Brigade Capital Management, L.P. | 11% |
| | Brigade Capital Management, LLC | 11% | Brigade Capital Management, LLC | 13% | TCW/Scoggin, LLC | 11% |
| | TCW/Scoggin, LLC | 8% | TCW/Scoggin, LLC | 11% | AQR Capital Management, L.P. | 19% |
| | Lazard Asset Management, LLC | 8% | Lazard Asset Management, LLC | 6% | Omega Advisors, Inc. | 11% |
| | Levin Capital Strategies, L.P. | 8% | Omega Advisors | 9% | Passport Capital, LLC | 13% |
| | Omega Advisors | 13% | AQR Capital Management, LLC | 13% | The Cambridge Strategy (Asset Management) Limited | 16% |

| Fund | Money Managers (as of September 2013) | Percent of Assets Managed | Money Managers (as of October 2014) | Percent of Assets Managed | Money Managers (as of September 2015) | Percent of Assets Managed |
|---|---|---|---|---|---|---|
| | AQR Capital Management, LLC | 9% | The Cambridge Strategy (Asset Management) Limited | 14% | - | - |
| | Galtere Ltd. and Galtera, N.A | 8% | - | - | - | - |
| | The Cambridge Strategy (Asset Management) Limited | 8% | - | - | - | - |
| | 2100 Xenon Group, LLC | 5% | - | - | - | - |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell Strategic Bond | Colchester Global Investors Limited | 8% | Colchester Global Investors Limited | 6% | Colchester Global Investors Limited | 6% |
| | Logan Circle Partners, L.P. | 20% | Logan Circle Partners, L.P. | 22% | Logan Circle Partners, L.P. | 22% |
| | Macro Currency Group - an Investment Group within Principal Global Investors LLC | 8% | Macro Currency Group - an Investment Group within Principal Global Investors LLC | 9% | Macro Currency Group - an Investment Group within Principal Global Investors LLC | 9% |
| | Metropolitan West Asset Management LCC | 20% | Metropolitan West Asset Management LCC | 17% | Metropolitan West Asset Management LCC | 17% |
| | Pacific Investment Management Company, LLC | 20% | Russell Investment Management Co. | 8% | Russell Investment Management Co. | 8% |
| | Wellington Management Company, LLP | 20% | Wellington Management Company, LLP | 18% | Wellington Management Company, LLP | 18% |
| | Brookfield Investment Management, Inc. | 5% | Brookfield Investment Management, Inc. | 5% | Brookfield Investment Management, Inc. | 5% |
| | - | - | Scout Investments, Inc. | 15% | Scout Investments, Inc. | 15% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |
| Russell US Small Cap Equity | EAM Investors, LLC | 5% | EAM Investors, LLC | 6% | EAM Investors, LLC | 5% |
| | Falcon Point Capital, LLC | 10% | Falcon Point Capital, LLC | 9.5% | Falcon Point Capital, LLC | 5.0% |
| | Next Century Growth Investors, LLC | 8% | Next Century Growth Investors, LLC | 7% | Next Century Growth Investors, LLC | 10% |
| | Ranger Investment Management, L.P. | 13% | Copeland Capital Management LLC | 8% | Ancora Advisors, LLC | 8% |
| | ClariVest Asset Management, LLC | 10% | Netols Asset Management, Inc. | 8.5% | Copeland Capital Management LLC | 11.0% |

| Fund | Money Managers (as of September 2013) | Percent of Assets Managed | Money Managers (as of October 2014) | Percent of Assets Managed | Money Managers (as of September 2015) | Percent of Assets Managed |
|---|---|---|---|---|---|---|
| | PENN Capital Management Company, Inc. | 5% | PENN Capital Management Company, Inc. | 6% | Netols Asset Management, Inc. | 9% |
| | Cardinal Capital Management, LLC | 5% | Cardinal Capital Management, LLC | 6% | PENN Capital Management Company, Inc. | 5.0% |
| | Chartwell Investment Partners | 13% | Chartwell Investment Partners | 12.5% | Cardinal Capital Management, LLC | 5% |
| | DePrince, Race & Zollo, Inc. | 13% | DePrince, Race & Zollo, Inc. | 10.5% | DePrince, Race & Zollo, Inc. | 12% |
| | Jacobs Levy Equity Management, Inc. | 13% | Jacobs Levy Equity Management, Inc. | 15.5% | Jacobs Levy Equity Management, Inc. | 11.0% |
| | Signia Capital Management, LLC | 8% | Signia Capital Management, LLC | 10.5% | Robeco Investment Management, Inc. | 10% |
| | - | - | - | - | Russell Investment Management Co. | 9.0% |
| | **Total** | **100%** | **Total** | **100%** | **Total** | **100%** |

Percentages represent approximate target allocations.

31.     In addition to limiting defendant RIMCo's role to general oversight and supervising the Money Managers, the Advisory Agreement limits defendant RIMCo's exposure to liability.  In particular, defendant RIMCo is not liable for any investment decision made by a Money Manager.  The Advisory Agreement contains the following language regarding defendant RIMCo's liability exposure as it pertains to assets managed by a Money Manager:

> The Trust intends to appoint one or more persons or companies ("Money Manager[s]") for each of the Sub-Trusts or segments thereof, and each Money Manager shall have full investment discretion and shall make all determinations with respect to the investment of a Sub-Trust's assets assigned to the Money Manager and the purchase and sale of portfolio securities with those assets, and such steps as may be necessary to implement its decision. ***The Manager shall not be responsible or liable for the investment merits of any decision by a Money Manager to purchase, hold, or sell a security for a Sub-Trust portfolio***.

32.     Defendant RIMCo shares its supervisory role with the Board, which further limits defendant RIMCo's responsibilities.  According to the Statement of Additional Information as supplemented through October 16, 2014, the Board oversees the Named Funds' activities,

monitors the quality of services provided to the Named Funds, and reviews the Named Funds' investment performance.

33.     Despite the fact that defendant RIMCo subcontracts its investment management duties to the Money Managers, it still keeps the lion's share of the management fees paid by the Named Funds.  Defendant RIMCo's management fees are based on a stated percentage of the Named Funds' AUM, calculated daily.  As such, the investment management fees are not based on the services actually rendered or defendant RIMCo's costs in providing services to the Named Funds.  Defendant RIMCo's effective fee schedule net of waivers and revenues collected for the Named Funds, is as follows:

| Fund | Year | Fees Paid to RIMCo (Net of Waivers) | Fees Paid to Money Managers | Fees Retained by RIMCo | RIMCo's Fees as a Percentage of Money Managers' Fees |
|---|---|---|---|---|---|
| Russell Commodity Strategies | 2014 | $8,204 | $2,514 | $5,690 | 226% |
| Russell Emerging Markets | 2014 | $31,662 | $11,131 | $20,531 | 184% |
| Russell Global Equity | 2014 | $31,900 | $9,894 | $22,006 | 222% |
| Russell Global Infrastructure | 2014 | $15,205 | $4,441 | $10,764 | 242% |
| Russell Global Opportunistic Credit | 2014 | $10,246 | $5,187 | $5,059 | 98% |
| Russell Global Real Estate | 2014 | $14,025 | $3,994 | $7,562 | 117% |
| Russell International Developed Markets | 2014 | $31,274 | $11,185 | $20,089 | 180% |
| Russell Multi-Strategy Alternative | 2014 | $14,589 | $10,081 | $4,508 | 45% |
| Russell Strategic Bond | 2014 | $37,417 | $6,463 | $30,954 | 479% |
| Russell U.S. Small Cap Equity | 2014 | $14,959 | $8,050 | $6,909 | 86% |
| **Total** | **-** | **$209,481** | **$72,940** | **$134,072** | **184%** |

Note: Figures in Thousands of US $.

34.     As demonstrated above, defendant RIMCo passes along only one-third of its fees to the Money Managers.  While the Named Funds paid defendant RIMCo over *$209 million* in advisory fees in 2014, the Money Managers were paid just *$72 million*.  In 2014, defendant RIMCo retained *$134 million* of the fees paid to it by the Named Funds in exchange for its

supervisory services.  The retained fees represented over *184%* of the fees paid to the Money Managers for actually managing the Named Funds' portfolios.

35.    As shown below, based on the advisory fees received by defendant RIMCo for the first six months of fiscal year 2015, RIMCo is projected to collect comparable advisory fees of $220 million in 2015.  Although the data is not publicly available as of the date of filing, as the following table demonstrates, the amount of advisory fees that defendant RIMCo charges is expected to be greater in 2015 compared to 2014.[3]  Similarly, given substantially the same contracts with the Money Managers, and substantially the same assets levels, the net revenue and operating profit retained by defendant RIMCo is expected to be comparable.

| Fund | Fiscal 2014 Management Fee Percentage (without waivers) | Advisory Fees Paid to RIMCo Ending Oct 31, 2014 (net of waivers) | Advisory Fees Paid to RIMCo Ending April 30, 2015 (net of waivers) | *Projected* Advisory Fees Paid to RIMCo Ending October 31, 2015 (net of waivers) |
|---|---|---|---|---|
| Russell Commodity Strategies | 1.25% | $8,204 | $5,341 | $10,682 |
| Russell Emerging Markets | 1.15% | $31,662 | $16,381 | $32,762 |
| Russell Global Equity | 0.95% | $31,900 | $15,490 | $30,980 |
| Russell Global Infrastructure | 1.25% | $15,205 | $7,643 | $15,286 |
| Russell Global Opportunistic Credit | 1.00% | $10,246 | $5,883 | $11,766 |
| Russell Global Real Estate | 0.80% | $14,025 | $7,165 | $14,330 |
| Russell International Developed Markets | 0.70% | $31,274 | $13,441 | $26,882 |
| Russell Multi-Strategy Alternative | 1.50% | $14,589 | $6,513 | $13,026 |
| Russell Strategic Bond | 0.50% | $37,417 | $17,452 | $34,904 |
| Russell U.S. Small Cap Equity | 0.70% | $14,959 | $14,959 | $29,918 |
| **Totals** | | **$209,481** | **$110,268** | **$220,536** |

---

[3] The figures in this table are projected from the amounts of advisory fees received and paid out by defendant RIMCo for the first six months of fiscal year 2015.  Defendant RIMCo's advisory fee information for the full fiscal year will not be publicly available until the RIC files its 2015 Statement of Additional Information in early 2016.

36.     Accordingly, despite the fact that the Money Managers have primary responsibility for investing the Named Funds' assets, the Money Managers retain just a small fraction of the total fees that defendant RIMCo charges the Named Funds.  Defendant RIMCo is responsible for assigning, overseeing, and evaluating the assets managed by the Money Managers, but these responsibilities are minimal compared to the Money Manager's day-to-day responsibilities of managing the Named Funds' portfolio.  If the fees defendant RIMCo charges the Named Funds bore a reasonable relationship to the supervisory services rendered, defendant RIMCo would retain a smaller portion of fees than those paid to the Money Managers.  This is not the case.  Defendant RIMCo charges an excessive mark-up for the middleman role it plays.

**B.     Defendant RIMCo Charged Excessive Fees Based on the Costs and Profitability of Providing Its Advisory Services**

37.     Defendant RIMCo's incremental costs of providing management services to the Named Funds are not substantial, while the additional fees received by defendant RIMCo are unreasonable and hugely excessive given that the nature, quality, and level of the services remain the same as AUM grow.  While fees of 1.5% or less may seem inconsequential, these percentages translate into substantial fees, and enormous profits, when applied to the Named Funds' assets in the billions of dollars.  In calendar years 2014 and 2015 (projected), defendant RIMCo was paid and will be paid a total of over ▮▮▮▮▮ and ▮▮▮▮▮, respectively, in investment management fees from the Named Funds.  Of that sum, in calendar year 2014, defendant RIMCo paid the Named Funds' Money Managers ▮▮▮▮▮ for sub-advisory services, retaining ▮▮▮▮▮, for itself.  Despite delegating nearly all of its investment management duties to the Money Managers and performing minimal additional work that was predominately supervisory in nature, defendant RIMCo charged fees that were over ▮▮▮

greater than the investment management fees that were paid to the Money Managers for these years.

38.     The true cost of investment management services should roughly correlate to the fees charged by the Money Managers.  In fact, as external, for-profit sub-advisers, the fees charged by the Money Managers to defendant RIMCo include the Money Managers' costs plus, presumably, a reasonable profit.  Even while the Money Managers' fees are much smaller than defendant RIMCo's fee, upon information and belief, the Money Managers still make a profit.

39.     As a result of delegating nearly all of the investment management services to the Money Managers, defendant RIMCo's costs for the services it actually provides to the Named Funds are minimal and its resulting profit levels are enormous.

40.     On information and belief, in calendar years 2014 and 2015, the operating costs incurred by defendant RIMCo were ███████████████████████████████████████ ███. In 2013 defendant RIMCO's costs were on average, approximately ████ of the fees it retained from the Named Funds after paying the Money Managers.  Thus, defendant RIMCo's net operating margin from providing advisory services to the Named Funds was ███████████ ███.



████████████████████████████████████████████████

41.     For some of the Named Funds, defendant RIMCo's net operating margin was even greater.  For instance, defendant RIMCo's costs for the services provided to ████████████

████████████████████████████████████████████████

the fees defendant RIMCo retained after paying the Money Managers, resulting in net operating profit margins of ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

42.     Accordingly, defendant RIMCo's markup for its investment management resulted in fees that are so disproportionately large that they bear no reasonable relationship to services rendered and could not be the product of negotiations conducted at arm's-length, and therefore constitute a breach of defendant RIMCo's fiduciary duty to the Named Funds with respect to the receipt of such compensation.

**C.      Economies of Scale Enjoyed in Connection with the Investment Management Services Were Not Passed on to the Named Funds as Required by Section 36(b)**

43.     The legislative history of Section 36(b) recognizes that an investment adviser's failure to pass on economies of scale to the fund is one of the principal causes of excessive fees. Economies of scale are created when AUM increase more quickly than the cost of advising and managing those assets.  The work required to operate a mutual fund does not increase proportionately with increases in AUM.  Investment management efforts, the most important (and most expensive) input into portfolio management, do not increase along with portfolio size.

A portfolio manager can invest $5 billion nearly as easily as $1 billion, and $20 billion nearly as easily as $10 billion.  Economies of scale should lead to lower fees as AUM increase.

44.     The existence of economies of scale in the mutual fund industry has been confirmed by both the U.S. Securities and Exchange Commission ("SEC") and the Governmental Accounting Office.  Both conducted in-depth studies of mutual fund fees in 2000, and both concluded that economies of scale exist in the provision of management services.

45.     Although significant economies of scale exist for the Named Funds, the associated cost savings largely have been appropriated for the benefit of the Defendants, rather than being shared with the Named Funds.  Defendant RIMCo's fee schedule is not designed for the Named Funds and their security holders to take advantage of the savings arising from economies of scale, as evidenced by the fact that defendant RIMCo charges the Named Funds flat rate fees based on net assets rather than using tiered fee schedules.  Although a flat rate fee schedule might be appropriate for a fund with a relatively small pool of assets, nine of the ten Named Funds discussed herein have more than *$1 billion* in assets and all ten funds have more than *$900 million* in assets.

| Named Fund | Net Assets (as of April 30, 2015) |
|---|---|
| Russell Strategic Bond | $6.8 billion |
| Russell International Developed Markets | $3.4 billion |
| Russell Global Equity | $3.2 billion |
| Russell Emerging Markets | $3.0 billion |
| Russell Global Real Estate | $1.6 billion |
| Russell US Small Cap Equity | $2.3 billion |
| Russell Commodity Strategies | $1.0 billion |
| Russell Global Infrastructure | $1.5 billion |
| Russell Global Opportunistic Credit | $1.9 billion |
| Russell Multi-Strategy Alternative | $609 million |

46.     As further evidence that defendant RIMCo is not sharing the savings it is enjoying from the Named Funds' economies of scale, the following table demonstrates that defendant RIMCo has charged nearly the same fee rates to the Named Funds since first initiating its management services despite the Named Funds' significant growth through additional investments.

| Fund | Fiscal 2014 Management Fee Percentage (without waivers) | Net Assets at Initiation | Net Assets (as of April 30, 2015) | Asset Growth Since Initiation |
|---|---|---|---|---|
| Russell Commodity Strategies | 1.25% | $996,000 | $1,043,819 | 5% |
| Russell Emerging Markets | 1.15% | $282,000 | $3,004,778 | 966% |
| Russell Global Equity | 0.95% | $907,000 | $3,212,884 | 254% |
| Russell Global Infrastructure | 1.25% | $624,000 | $1,554,444 | 149% |
| Russell Global Opportunistic Credit | 1.00% | $620,000 | $1,986,425 | 220% |
| Russell Global Real Estate | 0.80% | $624,000 | $1,678,315 | 169% |
| Russell International Developed Markets | 0.70% | $1,100,000 | $3,486,806 | 217% |
| Russell Multi-Strategy Alternative | 1.50% | $735,000 | $609,939 | -17% |
| Russell Strategic Bond | 0.50% | $438,000 | $6,854,293 | 1465% |
| Russell U.S. Small Cap Equity | 0.70% | $741,000 | $2,323,803 | 214% |

47.     To the extent that economies of scale exist, Section 36(b) requires investment companies to share the associated cost savings with shareholders.  One way to do this is to decrease the effective fee rate as AUM grows by instituting "breakpoints," which are levels of assets at which a lower fee rate would apply.  According to a leading study of the mutual fund industry, it is typical for mutual funds to implement such breakpoints as their AUM increases:

> Many funds employ a declining rate structure in which the percentage fee rate decreases in steps or at designated breakpoints as assets increase. The declining rate schedule reflects the expectation that costs efficiencies or scale economies will be realized in the management and administration of the fund's portfolio and operations as the fund grows.

John P. Freeman & Stuart L. Brown Study, *Mutual Fund Advisory Fees: The Cost of Conflicts of Interest*, J. Corp. L., Spring 2001, at 620, n.59.

48.     As shown by the above chart, despite the massive growth of the Named Funds, defendant RIMCo has scarcely reduced its management fee rates to share the benefits of economies of scale with the Named Funds.  For example, defendant RIMCo's fifty-five basis point fee rate for Strategic Bond yielded less than $1 million a year in advisory fees at initiation. Strategic Bond has since grown 1465%, but pays nearly the same fee rate as it did at initiation without having instituted any breakpoints, resulting in annual fees of more than $30 million.

49.     Similarly, defendant RIMCo has not instituted any breakpoints or any other declining rate structure to account for the other Named Funds' asset growth.

50.     The investment management fees paid to defendant RIMCo are disproportionate to the value of services rendered, and therefore excessive, given the excessive profits resulting from economies of scale.  The economies of scale enjoyed by defendant RIMCo with respect to the Named Funds have not been adequately shared with the Named Funds, as required by Section 36(b), in breach of defendant RIMCo's Section 36(b) fiduciary duty to the Named Funds with respect to such compensation.

## VI.     DEFENDANT RFSC CHARGED THE NAMED FUNDS EXCESSIVE ADMINISTRATIVE FEES

51.     As explained herein, defendant RFSC charged the Named Funds disproportionately high administrative fees in breach of its fiduciary duties under Section 36(b) of the ICA.  The excessiveness of the fees and the absence of arm's-length bargaining are demonstrated by, inter alia: (i) the nature and quality of services provided to the Named Funds and its security holders in exchange for the administration fees; (ii) the cost and profitability of defendant RFCS's provision of administrative services; (iii) the failure of defendant RFSC to adequately pass economies-of-scale savings on to the Named Funds via breakpoints or other fee reductions, and the retention of those economies-of-scale savings by defendant RFSC; and (iv)

████████████████████████████████████

████████████████████████████████

52.    The Named Funds have entered into an Administrative Agreement with defendant RFSC for the provision of administrative services.

53.    Defendant RFSC charges each of the Named Funds fees in exchange for the administrative services provided.

54.    The administrative fees charged to each Named Fund are calculated as percentage of each Named Fund's AUM.  The fee rate is determined by the following fee schedule, with breakpoint points based on the combined AUM of all of the funds in the RIC fund complex, including the Named Funds but excluding the Target Date Funds.

| AUM | Administrative Fee Rate |
|---|---|
| $0 to $25 billion | 0.0500% |
| >$25 billion to $35 billion | 0.0475% |
| >$35 billion to $45 billion | 0.0450% |
| >$45 billion to $55 billion | 0.0400% |
| >$55 billion | 0.0350% |

55.    Applying these fee rates, defendant RFSC charged the Named Funds nearly ████ ████ in administrative fees in calendar year 2014, and is projected to charge the Named Funds more than $12.6 million in fiscal year 2015.[4]

A.    **The Nature and Quality of the Administrative Services Performed by Defendant RFSC Do Not Justify Its Fees**

56.    Defendant RFSC purportedly provides the following services to each Named Fund pursuant to the Administrative Agreement: (i) Fund Administration, which includes reporting valuation, fund expenses, tax, and compliance; (ii) Finance, which includes reporting

---

[4] This projected fee amount is based on the administrative fees paid by the Named Funds to defendant RFSC for the first six months of fiscal year 2015.  The fees paid to defendant RFSC for the full fiscal year 2015 will not be publicly available until early 2016.

and oversight of financial information; (iii) Risk Management, which includes overseeing various risks to the fund; (iv) Investment Operations, which includes middle office and operations services for the fund's investment process; (v) Legal, which includes drafting, advising, and reviewing legal materials; and (vi) Compliance, which includes advice and analysis for compliance matters related to the operation of the fund.

57.     Many of the administrative services purportedly provided by defendant RFSC pursuant to the Administrative Agreement are in fact, provided by the Money Managers.  For example, the Portfolio Management Contracts require the Money Managers to:  (i) perform all investment operations with respect to selecting portfolio securities for the Named Funds, determining which securities should be purchased for or sold from each Named Funds, and placing orders for the execution of such purchases and sales; (ii) monitor the Named Funds' compliance with applicable investment guidelines, restrictions, and policies, as well as with federal and state law, including the ICA and applicable tax law; and (iii) maintain various books and records on behalf of the Named Funds, including records of portfolio transactions and other financial information.

58.     In addition, as set forth in the following table, :





59. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████.

60.     The few remaining administrative services actually performed by defendant RFSC itself in exchange for the administrative fees charged to the Named Funds are neither complex nor extensive compared to the fees paid.

61. ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ Thus, defendant RFSC's employees devote only a small portion of their time and resources to administrative services for the Named Funds, and defendant RFSC is able to spread the cost of providing these overlapping administrative services across a large number of clients.

**B.     The Costs and Profitability of Providing Administrative Services Do Not Justify Defendant RFSC's Fees**

62.     The administrative fees charged by defendant RFSC do not bear a reasonable relationship to the costs of providing administrative services, resulting in excessive profits.

63.     In calendar year 2013, defendant RFSC charged the Named Funds administrative fees of more than ██████ while incurring administrative costs of slightly ██████ ██████ resulting in operating profits of ██████████, an average profit margin of over ████

- 26 -



64.     Because the costs of providing administrative services do not increase proportionately with AUM, defendant RFSC's profit margins from providing administrative services ████████████████████████████████████████████ ████████████████████████████████████████████ ██████

65.     Defendant RFSC collected even greater administrative fees for fiscal year 2014 and is projected to collect even greater administrative fees for fiscal year 2015, as reflected by the table below:

| Fund | Admin Fees Paid in Fiscal Year 2014 (without waivers) | Admin Fees Paid in 6 Months Ended April 30, 2015 | *Projected* Admin. Fees Paid in Fiscal Year 2015 |
|---|---|---|---|
| Russell Commodity Strategies | $557 | $273 | $546 |
| Russell Emerging Markets | $1,311 | $677 | $1,354 |
| Russell Global Equity | $1,599 | $775 | $1,550 |
| Russell Global Infrastructure | $778 | $395 | $790 |
| Russell Global Opportunistic Credit | $677 | $398 | $796 |
| Russell Global Real Estate | $835 | $425 | $850 |
| Russell International Developed Markets | $2,128 | $912 | $1,824 |
| Russell Multi-Strategy Alternative | $463 | $207 | $414 |
| Russell Strategic Bond | $3,564 | $1,696 | $3,392 |
| Russell U.S. Small Cap Equity | $1,017 | $568 | $1,136 |
| **Total** | **$12,929** | **$6,326** | **$12,652** |

66.     Although neither defendant RFSC's administrative revenues for the 2015 calendar year, nor their costs and profit margins for calendar years 2014 and 2015 are publicly available, they are expected to be comparable to expenses incurred in 2013.  Because the same fee structure and costs are in place, and because defendant RFSC and its contractors are providing substantially the same services pursuant to substantially the same agreements, defendant RFSC's profit margins for 2014 and 2015 from providing administrative services will likely be comparable to, if not greater than, its margins for 2013.

**C.     Economies of Scale Were Not Passed on to the Named Funds**

67.     ████████████████████████████████████████████████████

████████████████████ and, as a result, it has realized economies of scale as AUM increased in recent years.   However, defendant RFSC has failed to appropriately share the benefits the economies of scale it realized with the Named Funds.

68.     Although the administrative fee schedule for the Named Funds includes breakpoints, those breakpoints do not appropriately account for the substantial increases in the AUM of each of the Named Funds since initiation:  they are set too high, spaced too far apart,

and have only negligibly decreased the effective administrative fee rates charged to the Named Funds.

69.     The breakpoints in the administrative fee schedule are based on the overall AUM of nearly all the RIC fund complex, including the Named Funds, but excluding the Target Date Funds.  Therefore, even a substantial increase in the AUM of a Named Fund will not result in a reduction of the administrative fee rate charged to such fund if the AUM of other RIC complex of funds decline or do not similarly increase.

70.     The first breakpoint in the administrative fee schedule is set too high at $25 billion in AUM, thereby failing to share any of the substantial economies of scale realized by defendant RFSC below $25 billion in AUM.

71.     For the next $10 billion in AUM (>$25 billion to $35 billion), there is only a nominal decline in the administrative rate of 0.25 basis points from five basis points to 4.75 basis points.  For the next $10 billion in AUM (>$35 billion to $45 billion) the administrative fee rate again decreases by only 0.25 basis points to 4.5 basis points.  Further breakpoints exist after $45 billion, but because the AUM for the relevant funds is only $46 billion, the subsequent breakpoints have had scarcely any effect on the effective fee rates.

72.     ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████



73.     For example, between 1995 and 2014, Strategic Bond grew from $173 million to nearly $8 billion in AUM.   At the same time, ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████. ███████████████████ ███████████████████████████████████████████████████████ ████████████████. By contrast, due to the increase in Strategic Bond's AUM, the dollar amount of administrative fees charged to Strategic Bond increased from $87,000 in 1995 to approximately more than ████████████ in 2014.   Therefore, over the past twenty years, Strategic Bond's administrative fee has grown to ████████████████████████████.

74.     Defendant RFSC is projected to collect comparably high fees for fiscal year 2015 as a result of the growth of AUM.   Because defendant RFSC has not implemented any new

breakpoints for the administrative fee schedule, it has continued to capture the benefits of economies of scale for itself without appropriately sharing those benefits with the Named Funds.



**D.**

75.

76.

77.

## VII.   DEFENDANTS CHARGED DUPLICATIVE FEES TO THE NAMED FUNDS FOR INVESTMENT MANAGEMENT AND ADMINISTRATIVE SERVICES

78.     Although it delegates responsibility for managing most of the Named Funds' assets to the Money Managers, defendant RIMCo manages a portion (approximately 13.4%) of the Named Funds' assets in unregistered funds.

79.     Defendant RIMCo invests that portion of the Named Funds' assets in two other unregistered funds—the US Cash Management Fund (the "Cash Management Fund") and the US Cash Collateral Fund (the "Cash Collateral Fund") (collectively, the Affiliate-Managed Funds) which, in turn, invest in cash and cash equivalents.

80.     The following tables show the percentage and total amounts of each Named Fund's assets that are invested in the Affiliate-Managed Funds:

| Fund | Assets in the U.S. Cash Collateral Fund (as of April 30, 2015) | Percentage of Total Net Assets |
|---|---|---|
| Russell Commodity Strategies | $ - | 0.0% |
| Russell Emerging Markets | $105,364 | 3.5% |
| Russell Global Equity | $104,184 | 3.2% |
| Russell Global Infrastructure | $39,711 | 2.6% |
| Russell Global Opportunistic Credit | $ - | 0.0% |
| Russell Global Real Estate | $42,489 | 2.5% |
| Russell International Developed Markets | $132,661 | 3.8% |
| Russell Multi-Strategy Alternative | $ - | 0.0% |
| Russell Strategic Bond | $ - | 0.0% |
| Russell U.S. Small Cap Equity | $167,558 | 7.2% |
| **Total** | **$591,967** | **2.3%** |

Note: Figures in Thousands of US$.

| Fund | Assets in the U.S. Cash Management Fund (as of April 30, 2015) | Percentage of Total Net Assets |
|---|---|---|
| Russell Commodity Strategies | $925,797 | 88.7% |
| Russell Emerging Markets | $142,821 | 4.8% |
| Russell Global Equity | $150,916 | 4.7% |
| Russell Global Infrastructure | $20,968 | 1.3% |
| Russell Global Opportunistic Credit | $255,622 | 12.9% |
| Russell Global Real Estate | $23,565 | 1.4% |
| Russell International Developed Markets | $113,307 | 3.2% |
| Russell Multi-Strategy Alternative | $135,158 | 22.2% |
| Russell Strategic Bond | $1,008,035 | 14.7% |
| Russell U.S. Small Cap Equity | $82,865 | 3.6% |
| **Total** | **$2,859,054** | **11.1%** |

Note: Figures in Thousands of US$.

81.     Both of the Affiliate-Managed Funds were organized and are advised by defendant RIMCo. In addition, both have retained defendant RFSC as their administrative agent.

82.     The Cash Collateral Fund pays an annual advisory fee of ▮▮▮▮ of its AUM to defendant RIMCo and an administrative fee of ▮▮▮▮ to defendant RFSC.

83.     The Cash Management Fund pays an administrative fee of 0.05% of its AUM to defendant RFSC and an advisory fee of 0.05% to defendant RIMCo.

84.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, defendant RIMCo

continues to charge and retain an advisory fee for the Cash Collateral Fund, and defendant RFSC continues to charge and retain administrative fees for both the Cash Management Fund and the Cash Collateral Fund.

85.     When calculating the advisory and administrative fees paid by the Affiliate-Managed Funds to Defendants, the assets reinvested from the Named Funds into the Affiliate-Managed Funds are counted as part of the Affiliate-Managed Funds' AUM.

86.     At the same time, these same assets reinvested from the Named Funds into the Affiliate-Managed Funds are also counted as part of the Named Funds' AUM when calculating the advisory and administrative fees paid by the Named Funds to Defendants.

87.     As a result, the Named Funds are double-charged for advisory and administrative services with respect to assets reinvested from the Named Funds into the Affiliate-Managed Funds.  The Named Funds pay for two layers of those services, both through the advisory and administrative fees charged to the Named Funds by Defendants, as well as through the advisory and administrative fees charged to the Affiliate-Managed Funds by the Defendants.

88.     As shown in the following table, for fiscal year 2015, the Named Funds are projected to pay defendant RIMCo more than $5 million in advisory fees on assets that were invested in the Cash Collateral Fund.  Such amount is excessive and disproportionate to the services provided, and a breach of defendant RIMCo's fiduciary duty under Section 36(b) because: (i) the Named Funds separately compensated defendant RIMCo for any advisory services provided for such assets through the advisory fee charged to the Cash Collateral Fund; and (ii) in its capacity as the Named Funds' investment adviser, defendant RIMCo merely transfers the cash reserves to the Cash Collateral Fund, and does not provide services justifying a

second layer of fees.  The following table shows the projected double-charged fees charged by defendant RIMCo for fiscal year 2015:

| Fund | Assets in U.S. Cash Collateral Fund (as of April 30, 2015) | Advisory Fee Percentage with waivers (as of April 30, 2015) | Projected Double-Charged Advisory Fees for FY 2015 |
|---|---|---|---|
| Russell Commodity Strategies | $ - | 0.98% | $  - |
| Russell Emerging Markets | $105,364 | 1.15% | $1,212 |
| Russell Global Equity | $104,184 | 0.95% | $990 |
| Russell Global Infrastructure | $39,711 | 0.94% | $373 |
| Russell Global Opportunistic Credit | $ - | 0.72% | $ - |
| Russell Global Real Estate | $42,489 | 0.80% | $340 |
| Russell International Developed Markets | $132,661 | 0.70% | $929 |
| Russell Multi-Strategy Alternative | $ - | 1.50% | $ - |
| Russell Strategic Bond | $ - | 0.50% | $ - |
| Russell U.S. Small Cap Equity | $ 167,558 | 0.70% | $1,173 |
| **Total** | **$591,967** | | **$5,016** |

Figures in Thousands of US$.

89.     As shown in the following table, for fiscal year 2015, the Named Funds are projected to pay defendant RFSC administrative fees of nearly $2 million on assets that were invested in the Affiliate-Managed Funds as of April 30, 2015.  Such amount is excessive, disproportionate to the services provided, and a breach of defendant RFSC's fiduciary duty under Section 36(b) because the Named Funds separately compensated defendant RFSC for any administrative services provided with respect to such assets through the administrative fee charged to the Affiliate-Managed Funds.

| Fund | Sum of Assets in Cash Collateral & Cash Management Funds (as of April 30, 2015) | Administration Fee Percentage (as of April 30, 2015) | Projected Double-Charged Administration Fees for FY2015 |
|---|---|---|---|
| Russell Commodity Strategies | $925,797 | 0.05% | $463 |
| Russell Emerging Markets | $248,185 | 0.05% | $124 |
| Russell Global Equity | $255,100 | 0.05% | $128 |
| Russell Global Infrastructure | $60,679 | 0.05% | $30 |
| Russell Global Opportunistic Credit | $255,622 | 0.05% | $128 |
| Russell Global Real Estate | $66,054 | 0.05% | $33 |
| Russell International Developed Markets | $245,968 | 0.05% | $123 |
| Russell Multi-Strategy Alternative | $135,158 | 0.05% | $68 |
| Russell Strategic Bond | $1,008,035 | 0.05% | $504 |
| Russell U.S. Small Cap Equity | $250,423 | 0.05% | $125 |
| **Total** | | | **$1,726** |

Figures in Thousands of US$.

90.     The duplicative fees charged by Defendants are excessive because they are not reasonably related to the services provided and they do not bear the hallmarks of arm's-length bargaining.

## VIII.  THE BOARD DID NOT ACT CONSCIENTIOUSLY IN APPROVING THE INVESTMENT MANAGEMENT AND ADMINISTRATIVE FEES CHARGED TO THE NAMED FUNDS

91.     Fund trustees have a fiduciary duty to mutual funds and to their shareholders (who, individually, have no power to negotiate such fees for the funds) to negotiate fees that are both beneficial to the mutual funds and are comparable to fees that would be negotiated at arm's-length.  For the reasons discussed herein, the Board was not acting consistently with its fiduciary duty when it approved the investment management and administrative fees charged to the Named Funds by Defendants, and allowed these fees to continue.

92.     The same Board oversees each of the forty-seven funds in the Russell Family of Funds.  The Board is composed of nine trustees, who meet, oversee, and make decisions for all the funds in the Russell Family of Funds.  The Board's members are compensated for their services.  As a result of the compensation they receive, Board membership in the Russell Family

of Funds is a lucrative part-time job for the fund trustees.  In 2013 alone, the members of the

Board received compensation from funds in the RIC fund complex in the following amounts:[5]

| Trustee | Total Compensation in Fiscal Year Ended October 31, 2012 | Total Compensation in Fiscal Year Ended October 31, 2013 | Total Compensation in Fiscal Year Ended October 31, 2014 |
|---|---|---|---|
| Thaddas L. Alston | $142,000 | $153,500 | $165,000 |
| Kristianne Blake | $212,500 | $221,500 | $236,833 |
| Cheryl Burgermeister | $12,500 | $138,500 | $149,000 |
| Daniel P. Connealy | $123,833 | $118,333 | $138,317 |
| Katherine W. Krysty[1] | - | - | $123,000 |
| Jonathan Fine[2] | $124,500 | $128,500 | $24,000 |
| Raymond P. Tennison, Jr. | $143,500 | $157,500 | $165,500 |
| Jack R. Thompson | $140,500 | $153,500 | $165,500 |
| Julie W. Weston[2] | $137,500 | $146,000 | $30,500 |

(1) Katherine W. Krysty was elected to the Board of Trustees effective January 1, 2014.

(2) Jonathan Fine and Julie W. Weston retired from the Board of Trustees effective December 31, 2013.

93.     The Board has a separate and distinct fiduciary duty to each mutual fund in the

Russell Family of Funds to enter into serious and substantive negotiations with respect to all fees

charged by advisers, including Defendants.

94.     The trustees are supposed to be "watchdogs" for the Russell Family of Funds'

security holders.  The trustees, however, cannot properly monitor or negotiate on behalf of the

Russell Family of Funds because they are charged with the oversight of forty-seven funds in the

Russell Family of Funds.  Each fund has its own lengthy prospectus, regulatory filings, and

compliance issues to review.

95.     Furthermore, even if statutorily "non-interested," the trustees are in all practical

respects dominated and unduly influenced by Defendants in reviewing the fees paid by the

Russell Family of Funds and their security holders.  The trustees' continuation in the role of an

---

[5] Sandra Cavanaugh ("Cavanaugh") who serves as RIC's President, Chief Executive Officer ("CEO"), and a trustee on the Board is not separately compensated by the Russell Family of Funds for her services as a trustee.

independent trustee from year-to-year, and the compensation they earn, is at least partially dependent on the continued goodwill and support of Defendants and Cavanaugh, who serves as the President and CEO of both RIC and defendant RFSC, a trustee on the Board, and as a director of defendant RIMCo.

96.     In approving the Advisory Agreement and the Administrative Agreement, the Board has relied on information and analyses that were prepared by Defendants or were provided to justify the exorbitant fees charged to the Russell Family of Funds.  The Board has not adequately considered all information and analyses necessary to determine whether the fees charged are in the best interest of the shareholders.

97.     The Board has not considered information or analyses reflecting the interests of the Russell Family of Funds or their shareholders with respect to the fees charged or critically assessed Defendants' rationalization for those fees.

98.     The Board has not taken sufficient steps to negotiate reasonable fees with Defendants.  For example, the Board has not solicited proposals from others to provide investment advisory or administrative services to the Russell Family of Funds.

99.     Nor has the Board negotiated a "most favored nation" provision into the Advisory Agreement or the Administrative Agreement, which would require that the fees paid by each of the Named Funds be at least as favorable as the lowest rate other clients pay for the same or substantially the same services.

100.     The Board has not appropriately considered the economies of scale realized by Defendants in providing investment advisory and administrative services to the Named Funds, nor has it negotiated reductions in the Named Funds' investment management and administrative

fee schedules to ensure the Named Funds and their shareholders appropriately shared in the benefits of economies of scale as their AUM increased.

101.    The Board permitted Defendants to double-charge the Named Funds for investment management and administrative services with respect assets reinvested from the Named Funds into the Affiliate Managed Funds without appropriately considering the services provided with respect to such assets or obtaining an appropriate reduction in the investment management and administrative fees charged to the Named Funds with respect to such assets.

102.    An independent board acting conscientiously would not have approved the investment management and administrative fees charged by Defendants given the nature of the services provided, Defendants' costs and profitability from those services, and the failure to pass along economies of scale.

103.    Moreover, a board acting conscientiously would not disregard that a majority of the Named Funds pay among the highest advisory fees of their peer funds.  According to the Named Funds' 2014 Annual Report dated October 31, 2014:

> The Third-Party Information, among other things, showed that the Russell U.S. Dynamic Equity Fund, Russell Tax-Managed U.S. Large Cap Fund, Russell Tax-Managed U.S. Mid & Small Cap Fund, Russell Global Equity Fund, ***Russell Emerging Markets Fund, Russell Strategic Bond Fund***, Russell Short Duration Bond Fund, ***Russell Global Opportunistic Credit Fund, Russell Commodity Strategies Fund, Russell Global Infrastructure Fund, Russell Global Real Estate Securities Fund, and Russell Multi-Strategy Alternative Fund*** each had an Advisory Fee which, compared with its Comparable Funds' investment advisory fees on an actual basis, was ***ranked in the fourth or fifth quintile of its Expense Universe*** for that expenses component. In these rankings, the first quintile represents funds with the lowest investment advisory fees among funds in the Expense Universe and the fifth quintile represents funds with the highest investment advisory fees among the Expense Universe funds. The comparisons were based upon the latest fiscal years for the Expense Universe funds.

104.    Further, the Board approved defendant RIMCo's advisory fees for the Named Funds despite many of the Named Funds' underperformance in various periods.  For example, as of fiscal year ended October 31, 2014:

- Commodity Strategies ranked in the fourth quintile of the Performance Universe for the 3-year period ended on December 31, 2013.

- Strategic Bond was ranked in the fourth quintile of its Performance Universe for the 1, 3 and 5 year periods ended December 31, 2013.

- Global Real Estate Securities was ranked in the fourth quintile of the Performance Universe for the 3-year period ended December 31, 2013.

- Multi-Strategy Alternative was ranked in the fifth quintile of its Performance Universe for the 1-year period ended December 31, 2013.

RIC Annual Report dated October 31, 2014.

105.    The Board's lack of conscientiousness resulted in investment management and administrative fees that are disproportionate to the services rendered and that lack the hallmarks of an arm's-length bargain.

## IX.    COUNT I - AGAINST DEFENDANT RIMCO PURSUANT TO SECTION 36(B) ON BEHALF OF THE NAMED FUNDS (INVESTMENT MANAGEMENT FEES)

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Defendant RIMCo had a fiduciary duty to the Named Funds and their investors with respect to the receipt of compensation for services and payments of a material nature made by and to defendant RIMCo.

108.    The fees charged by defendant RIMCo for providing investment management services to the Named Funds breached defendant RIMCo's fiduciary duty to the Named Funds with respect to such compensation.

109.    This Count is brought by plaintiff on behalf of the Named Funds against defendant RIMCo for breach of its fiduciary duties with respect to the receipt of compensation as defined by Section 36(b).

110.    The excessive fees received by defendant RIMCo were in breach of its fiduciary duties to the Named Funds with respect to such compensation.  By reason of the conduct described in this complaint, defendant RIMCo violated Section 36(b).

111.    As a direct, proximate, and foreseeable result of defendant RIMCo's breach of fiduciary duty, the Named Funds and their shareholders have sustained millions of dollars in damages.

112.    In charging and receiving inappropriate, unlawful, and excessive compensation, and in failing to put the interests of the Named Funds and their security holders ahead of its own interests, defendant RIMCo has breached and continues to breach its statutory fiduciary duty to plaintiff in violation of Section 36(b).

113.    Plaintiff seeks, pursuant to Section 36(b)(3), the actual damages resulting from the breach of fiduciary duty by defendant RIMCo, up to and including, the amount of compensation or payments received from the Named Funds and earnings that would have accrued to plaintiff had that compensation not been paid.

114.    Alternatively, plaintiff seeks rescission of the Advisory Agreement and restitution of all the excessive fees paid pursuant thereto. *See* ICA section 47(b), 15 U.S.C. §80a-46(a)-(b).

## X.    COUNT II - AGAINST DEFENDANT RFSC PURSUANT TO SECTION 36(B) ON BEHALF OF THE NAMED FUNDS (ADMINISTRATIVE FEES)

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    Defendant RFSC had a fiduciary duty to the Named Funds and their investors with respect to the receipt of compensation for services and payments of a material nature made by and to defendant RFSC.

117.    The fees charged by defendant RFSC for providing administrative services to the Named Funds breached defendant RFSC's fiduciary duty to the Named Funds with respect to such compensation.

118.    This Count is brought by plaintiff on behalf of the Named Funds against defendant RFSC for breach of its fiduciary duties with respect to the receipt of compensation as defined by Section 36(b).

119.    The excessive fees received by defendant RFSC were in breach of its fiduciary duties to the Named Funds with respect to such compensation.  By reason of the conduct described in this complaint, defendant RFSC violated Section 36(b).

120.    As a direct, proximate, and foreseeable result of defendant RFSC's breach of fiduciary duty, the Named Funds and their shareholders have sustained millions of dollars in damages.

121.    In charging and receiving inappropriate, unlawful, and excessive compensation, and in failing to put the interests of the Named Funds and their security holders ahead of its own interests, defendant RFSC has breached and continues to breach its statutory fiduciary duty to plaintiff in violation of Section 36(b).

122.    Plaintiff seeks, pursuant to Section 36(b)(3), the actual damages resulting from the breach of fiduciary duty by defendant RFSC, up to and including, the amount of compensation or payments received from the Named Funds and earnings that would have accrued to plaintiff had that compensation not been paid.

123.    Alternatively, plaintiff seeks rescission of the contracts and restitution of all the excessive fees paid pursuant thereto. *See* ICA section 47(b), 15 U.S.C. §80a-46(a)-(b).

## XI.    PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.    An order declaring that Defendants have violated and continue to violate Section 36(b) through the receipt of fees from the Named Funds that breach Defendants' fiduciary duties with respect to the receipt of compensation.

B.    An order preliminarily and permanently enjoining Defendants from further violations of the ICA.

C.    An order awarding compensatory damages on behalf of the Named Funds against Defendants, including repayment of all unlawful and/or excessive investment management fees paid to Defendants RIMCo and RFSC by the Named Funds from one year prior to the commencement of this action through the date of the trial, together with interest, costs, disbursements, attorneys' fees, fees of expert witnesses, and such other items as may be allowed to the maximum extent permitted by law.  Plaintiff reserves the right to seek punitive damages where applicable.

D.    An order rescinding the Advisory Agreement between defendant RIMCo and the Named Funds, and the Administrative Agreement between defendant RFSC and the Named Funds, including restitution of the excessive investment management, advisory, and administrative fees paid to Defendants by the Named Funds from one year prior to the commencement of this action through the date of the trial, together with interest, costs, disbursements, attorneys' fees, fees of expert witnesses, and such other items as may be allowed to the maximum extent permitted by law.

E.    Such other and further relief as may be just and proper under the circumstances.

Dated: December 15, 2015

HUTCHINGS, BARSAMIAN,
MANDELCORN & ROBINSON, LLP


/s/ Theodore M. Hess-Mahan
THEODORE M. HESS-MAHAN
BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone: (781) 431-2231
Facsimile: (781) 431-8726
thess-mahan@hutchingsbarsamian.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
EDWARD B. GERARD
JENNY L. DIXON
DANIEL L. SACHS
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
egerard@robbinsarroyo.com
jdixon@robbinsarroyo.com
dsachs@robbinsarroyo.com

ZWERLING, SCHACHTER &
ZWERLING, LLP
JEFFREY C. ZWERLING
ROBIN F. ZWERLING
SUSAN SALVETTI
ANDREW W. ROBERTSON
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969
jzwerling@zsz.com
rzwerling@zsz.com
ssalvetti@zsz.com
arobertson@zsz.com

Attorneys for Plaintiff

1068594

- 43 -